UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
RICHARD LEE PAIVA,             )
                               )
         Plaintiff,            )
                               )
     v.                        )     C.A. No. 13-252 S
                               )
EDWARD A. BLANCHETTE, et al.,  )
                               )
         Defendants.           )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Defendants and Plaintiff have filed cross-motions for summary judgment as to Defendants Blanchette and Vohr (ECF No. 65 ("Defs.' Mot. I"); ECF No. 71 ("Pl.'s Mot. I")), and Defendants Wall and Marocco (ECF No. 72 ("Pl.'s Mot. II"); ECF No. 75 ("Defs.' Mot. II")). The parties have filed objections to all four motions. (ECF No. 69 ("Pl.'s Obj. I"); ECF No. 74 ("Defs.' Obj. I"); ECF No. 80 ("Defs.' Obj. II"); ECF No. 84 ("Pl.'s Obj. II").) Plaintiff filed a Reply to Defendants Blanchette and Vohr's Objection to Plaintiff's Motion for Partial Summary Judgment (ECF No. 79). For the reasons discussed below, Defendants' motions are GRANTED and Plaintiff's motions are DENIED.

I.   Background

Plaintiff Richard Lee Paiva claims that his Eighth Amendment rights were violated during his incarceration at the Adult Correctional Institution ("ACI") in Cranston, Rhode Island, when prison doctors and officials failed to provide him with effective medical treatment to control his chronic back pain.  Plaintiff also alleges violations of the Americans with Disabilities Act ("ADA").  Plaintiff's allegations in this matter are similar in many respects to a prior lawsuit he filed in this District. See Paiva v. Bansal, No. CA 10-179-M, 2012 WL 1123527 (D.R.I. Apr. 3, 2012) (McConnell, J.) (granting Defendants' Motion for Summary Judgment).

The four defendants in the instant case are Edward A. Blanchette, M.D., Plaintiff's prison physician; Fred H. Vohr, M.D., Medical Program Director; Ashbel T. Wall, Director of the Rhode Island Department of Corrections; and Joseph Marocco, C.C.H.P., Associate Director of Health Care Services.  Plaintiff alleges that Drs. Blanchette and Vohr "repeatedly prescribed, and continued, known ineffective treatment"; "ignored and did not follow nearly all of the pain specialist[']s recommendations whom they consulted with, Dr. Todd Handel"; and failed to "perform a physical examination of the plaintiff in which he was touched." (Pl.'s Statement of Undisputed Facts ("Pl.'s SUF I") ¶¶ 18-19, 21, ECF No. 70.)  Plaintiff also claims that Defendant

2

Wall was aware of Plaintiff's insufficient treatment yet "never took any action to ensure that [Plaintiff] was provided with meaningful, effective pain management." (Pl.'s Statement of Undisputed Facts ("Pl.'s SUF II") ¶¶ 12, 18, ECF No. 73.)

Plaintiff's complaints about his treatment are documented in a number of letters between him and Defendants Vohr and Wall. On August 9, 2012, Dr. Vohr informed Plaintiff that the medication he had previously been taking, Ultram or Tramadol, was no longer available at the ACI because while "[i]t was originally marketed as a non-narcotic substitute for opiods [sic], (Vicodin, Morphine, etc.) . . . it clearly has all the negative attributes of narcotics as well as increased reports of serious adverse effects." (Ex. F to Defs.' Mot. I, ECF No. 65-7.) On September 4, 2012, Dr. Vohr explained that "the decision to remove Tramadol from the formulary was based on careful consideration of the drug's benefits as well as harmful effects, and upon recommendations from our pharmacy board and departments of correction from across the country." (Ex. G to Defs.' Mot. I, ECF No. 65-8.) On October 3, 2012, Mr. Paiva wrote a letter to Director Wall in which he stated:

> Since my incarceration, I have been prescribed Motrin and Neurontin, each, three different times already. Both medications have previously proven to be ineffective and do not help to reduce my pain. Since my injury, I have had three steroid injections. All three of the injections have also been ineffective and not helped to reduce my pain.

3

> Instead of following the recommendations of the Pain Specialist that has been charged with my chronic pain management, and trying new medications and/or treatment, Dr. Blanchette is re-prescribing me the same known ineffective medications (Motrin and Neurontin) and treatment (steroid injections), over and over again.  In the meantime, weeks, and now months are passing by, while I am left to unnecessarily suffer and endure constant, moderate to severe sciatic pain.
>
> And yet, with Dr. Vohr having full knowledge of this, I am still currently prescribed only Motrin and Neurontin, and I have yet another steroid injection scheduled.  I am in constant pain and need to be provided with effective chronic pain management.

(Ex. H to Defs.' Mot. I, ECF No. 65-9.)  Wall responded in a letter dated October 5, 2012, indicating that he had instructed his staff to contact Dr. Vohr to provide a detailed report regarding Plaintiff's treatment, that Plaintiff had been referred to the neurosurgery clinic and Dr. Handel, and that Wall considered Drs. Vohr and Blanchette an authority relative to Plaintiff's condition and considered the issue closed.  (Wall Aff. ¶ 5, ECF No. 75-3.)  From October 2012 to June 2013, Plaintiff continued to write a series of letters to Dr. Vohr, complaining about Dr. Blanchette's medical care.  (See Exs. B – E to Pl.'s Obj. I, ECF Nos. 69-3 – 69-6.)  Most recently, Plaintiff states that his "day to day pain management consists of a single, known ineffective n-said medication, Naprosyn, and that his numerous ongoing requests for medical treatment for his

chronic pain are being ignored by defendants Blanchette and Vohr." (Pl.'s SUF I ¶ 31, ECF No. 70.)

Regarding Defendant Marocco, Plaintiff alleges that he "informed defendant Marocco that he had difficulty sleeping" and asked "that he be accommodated with a softer 'medical mattress.'" (Pl.'s SUF II ¶ 7, ECF No. 73.) According to Plaintiff, Marocco "suggested that because the plaintiff was given a 'new' standard issue mattress, that an accommodation of a 'medical mattress' was not warranted, despite one being ordered by an ACI physician." (Id. ¶ 8.) In reality, Mr. Marocco's letter stated that the Department of Corrections had already attempted to accommodate Mr. Paiva's request with a new mattress, and "[i]f you feel that this accommodation is not appropriate I would suggest you see the physician assigned to your facility regarding your alleged ADA incapacitation to see if the physician concurs with you." (Ex. B to Pl.'s Mot. II at 6, ECF No. 72-3.) Regarding Plaintiff's claim that he had difficulty sleeping, Defendants have produced a sleep log showing that Mr. Paiva slept through the night a number of times. (Ex. D to Defs.' Mot. I, ECF No. 65-5.)

Pursuant to the Court's scheduling order in this case, expert disclosures were required to be made by June 30, 2014. (Defs.' Mot. I 14, ECF No. 65-1.) Plaintiff failed to disclose any expert witnesses. (Id.) Defendants identified Donald C.

Kern, M.D., M.P.H., C.C.H.P, as an expert who will testify on their behalf. (Id. at 6.) Defendants anticipate that "Dr. Kern will testify to a reasonable degree of medical certainty that defendants performed well within the standard of care for the average practitioner in their field, and that nothing defendants did, or failed to do, was the cause of any of Mr. Paiva's alleged injuries." (Id.)

II. Discussion

    A.   Legal Standard

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is only considered "'genuine' if it 'may reasonably be resolved in favor of either party.'" Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997)(quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). When deciding a motion for summary judgment, the court must "examine[] the entire record 'in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor.'" Id. at 959 (quoting Maldonado-Denis, 23 F.3d at 581). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are

not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001) (citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

B.   Defendants Blanchette and Vohr

The only claim that remains asserted against Defendants Blanchette and Vohr is Plaintiff's Eighth Amendment claim.[1]   A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' Gregg v. Georgia, [428 U.S. 153, 173 (1976)] (joint opinion), proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106.

To prevail on an Eighth Amendment claim stemming from inadequate medical treatment, a prisoner must first show that he has a "serious medical need . . . that has been diagnosed by a physician as mandating treatment, or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Mahan v. Plymouth Cnty. House of Corrs., 64 F.3d 14, 18 (1st Cir. 1995 )(quoting Gaudreault v.

_____

[1]   Plaintiff conceded in his objection to Defendants Blachette and Vohr's Motion that he had withdrawn all medical malpractice claims and that he "d[id] not object to a partial summary judgment in [Defendants Blanchette and Vohr's] favor as to [the ADA and Rebiliation Act] claims."  (Pl.'s Obj. I 4, ECF No. 69-1.)

<u>Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990)). Second, the plaintiff must demonstrate "such indifference [to his serious medical need] that can offend 'evolving standards of decency' in violation of the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106. Deliberate indifference "may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." <u>DesRosiers v. Moran</u>, 949 F.2d 15, 19 (1st Cir. 1991). However, "[i]n evaluating the quality of medical care in an institutional setting, courts must fairly weigh the practical constraints facing prison officials." <u>Id.</u> Thus, "a claim of inadequate medical treatment which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." <u>Id.</u> at 20.

Here, Defendants Blanchette and Vohr argue that Plaintiff "relies solely on theories, conclusory allegations, and conspiracies" and has not put forward any evidence showing that they were deliberately indifferent to his medical needs; at most, he has shown "a disagreement with the physicians at the A.C.I." about his medical treatment, which does not rise to the level of an Eighth Amendment violation. (Defs.' Mot. I 11, ECF No. 65-1.) Blanchette and Vohr further argue that Plaintiff's failure to identify an expert is fatal to "his threshold claim

of inadequate medical care" because "[t]he nature of the injury and the treatment Mr. Paiva has received as well as the type and dosage of any medication, the use of steroid injections, the use of physical therapy that Plaintiff may require is well beyond the knowledge of a lay person and requires testimony from a qualified medical expert." (Id. at 13-14.)

The Court agrees with Defendants. As Judge McConnell found in a previous case involving Plaintiff, "[w]hile the court does not doubt that Mr. Paiva experienced pain during his time at the Intake Service Center, the record does not support his allegations of deliberate indifference." Paiva, 2012 WL 1123527, at *4. Mr. Paiva simply has not established that the allegedly insufficient pain medication was more than a disagreement with the course of treatment his doctors chose. See Robinson v. Hillsborough Cnty. Dep't of Corr., Civil No. 10-cv-19-PB, 2010 WL 3944643, at *8 (D.N.H. Sept. 13, 2010) report and recommendation adopted, Civil No. 10-cv-19-PB, 2010 WL 3944557 (D.N.H. Oct. 6, 2010)(finding that claim of inadequate pain medication was "a disagreement with the care the HCHC medical staff decided to provide to him" and thus not an Eighth Amendment violation).

On the facts of this case, Mr. Paiva would need an expert to prove that Drs. Blanchette and Vohr's course of treatment was deliberately indifferent to his pain, rather than justified by

other medical considerations, as Defendants' experts will testify. (See Defs.' Mot. I 11-12, ECF No. 65-1.) As another court found on a similar set of facts:

> [I]t is apparent that [the plaintiff]'s Eighth Amendment claim does not rest upon facts from which a reasonable fact-finder could, or will likely, conclude that the treating physicians acted with deliberate indifference, at least not in the absence of expert medical opinion evidence. That is, this is not a case in which it is plausibly alleged that doctors, being aware of a serious medical necessity and attendant suffering, nevertheless did nothing, knowing that failure to intervene would continue and exacerbate that suffering, or result in permanent damage.

> Rather, this is a case in which [the plaintiff]'s medical condition, concededly serious chronic back pain, complicated by the comparatively high doses of opioids he was taking, was seemingly amenable to varying medical treatment strategies. Different treatment alternatives involve different potential benefits and risks that must be weighed and, in the end, professional medical judgment must be exercised in deciding upon an appropriate treatment plan.

Boudreau v. Englander, No. 09-CV-247-SM, 2010 WL 2108219, at *2 (D.N.H. May 24, 2010); see also, e.g., Brown v. Englander, No. 10-cv-257-SM, 2012 WL 1986518, at *3 (D.N.H. June 1, 2012)(finding that "to prevail on his constitutional claims, [the plaintiff] must provide expert medical testimony" because "the medical treatment provided to [the plaintiff] (prescription and nonprescription medication designed to alleviate pain; steroid injections; consultations with surgeons and pain-management specialists) was not so obviously outrageous or malicious that a lay trier-of-fact could reasonably conclude

that it violated the Eighth Amendment's proscription against cruel and unusual punishment").

Although Plaintiff points to some case law in which inadequate medical care was sufficient to establish an Eighth Amendment violation without an expert, the facts of those cases are distinguishable in that the failure to provide adequate treatment was so egregious that the doctor's deliberate indifference would be obvious to a lay person. See, e.g., Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)(noting that "a lay person would recognize the need for a doctor's care to treat severe heartburn and frequent vomiting"); Jones v. Simek, 193 F.3d 485, 487 (7th Cir. 1999)(lack of treatment resulted in loss of use of the plaintiff's arm and the doctor said, "[s]o you lose your arm, that won't kill you"); Lavender v. Lampert, 242 F. Supp. 2d 821, 843 (D. Or. 2002)(finding question of fact on deliberate indifference due to "lack of AFO brace, denial of wheelchair, housing assignment in an area with hills, punishment in DSU for appearing at sick call regarding ongoing injury to toes, refusal to render treatment for toe injuries"); Seals v. Shah, 145 F. Supp. 2d 1378, 1385 (N.D. Ga. 2001)(finding Eighth Amendment violation where the plaintiff "suffered severe pain for four days and ultimately required surgery and a transmetatarsal amputation of his left leg" and "provided evidence that Dr. Shah was aware of the risk of harm to

Plaintiff and nevertheless disregarded that risk"); <u>Ruffin v. Deperio</u>, 97 F. Supp. 2d 346, 352 (W.D.N.Y. 2000)(Plaintiff "ultimately had a portion of his left foot amputated" when doctors failed to attend to continued swelling after a table fell on his foot); <u>Verser v. Elyea</u>, 113 F. Supp. 2d 1211, 1213 (N.D. Ill. 2000) (doctor refused to follow orthopedic specialist's recommendation of knee brace and physical therapy with no justification and without examining patient).

Here, the record shows that Defendants were giving Mr. Paiva treatment for his pain; it simply was not the treatment that he requested. A lay person would have insufficient medical expertise to know whether Drs. Blanchette and Vohr were reasonable in the pain medication they prescribed, and in failing to give Mr. Paiva an exam "where he was touched" to determine his course of pain treatment. (<u>See</u> Defs.' Obj. I 4-5, ECF No. 74.) Thus, Plaintiff has failed to show that there is sufficient evidence for a reasonable jury to find against Defendants Blachette and Vohr.

C.   Defendants Wall and Marocco

Plaintiff alleges Eighth Amendment and ADA violations against Defendants Wall and Marocco. (See Defs.' Mot. II 9-10, ECF No. 75.)

Regarding his ADA claim, Plaintiff argues that Marocco failed to provide him with a "reasonable accommodation" for his

alleged "sleeplessness" by not providing Plaintiff with a medical mattress at his request. (Pl.'s Obj. II 3, ECF No. 84.) As a threshold matter, "Mr. Paiva has not presented any evidence that he is 'disabled' and therefore protected under the ADA." Paiva, 2012 WL 1123527, at *5. However, even if he established that his alleged sleeplessness is a disability – which would be an uphill battle given Defendants' sleep log showing Plaintiff sleeping through the night (Ex. D to Defs.' Mot. I, ECF No. 65-5) – there is a dearth of evidence showing that Defendant Marocco failed to respond to Mr. Paiva's request for an accommodation. Indeed, the evidence shows that Marocco followed protocol and told Plaintiff to speak with his physicians, who ultimately needed to make any special medical request to be approved by the Deputy Warden. (Defs.' Mot. II 11-12, ECF No. 75.) Thus, Plaintiff's claim under the ADA fails.

That leaves Plaintiff's Eighth Amendment claims. Regarding Defendant Marocco, Plaintiff claims that his failure to provide a medical mattress constitutes deliberate indifference. As explained above, there is no evidence that Marocco denied Plaintiff's request for the mattress; it appears he merely referred Plaintiff to his physician. This cannot amount to deliberate indifference.

The sum total of Plaintiff's allegations against Director Wall appears to be that Plaintiff notified Wall of his allegedly

insufficient treatment by Dr. Blanchette.  Wall consulted with Dr. Vohr and others in his office, and then told Plaintiff that he deferred to the physicians' medical expertise.  As explained above, the facts of this case are not such that a lay person, such as Director Wall, could determine that Mr. Paiva's treatment demonstrated deliberate indifference.  Thus, this Court finds that there is not sufficient evidence to show that Wall's reliance on Drs. Blanchette and Vohr's medical opinions regarding Plaintiff's course of treatment was deliberately indifferent.  The only evidence Plaintiff has to the contrary is his own testimony that his treatment was allegedly not working. (See Pl.'s Obj. II 2-3, ECF No. 84.)  This is simply not sufficient to show "the unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 103.[2]

III. Conclusion

For the foregoing reasons, Defendants Edward A. Blanchette and Fred H. Vohr's Motion for Summary Judgment, and Defendants A.T. Wall and Joseph Marocco's Motion for Summary Judgment, are hereby GRANTED; Plaintiff's Motion for Partial Summary Judgment as to Defendants Blanchette and Vohr, and Motion for Partial

---

[2]   Accordingly, the Court need not reach Defendants Wall and Marocco's argument that Plaintiff's claim is barred by res judicata and collateral estoppel. (See Defs.' Mot. II 12-16, ECF No. 75.)

Summary Judgment as to Defendants Wall and Marocco, are hereby
DENIED.

IT IS SO ORDERED.

William E. Smith
Chief Judge
Date:  September 28, 2015